SMITH v. MULLEN.

Opinion delivered November 30, 1925.

EXECUTORS AND ADMINISTRATORS—CLAIM OF ADMINISTRATOR AGAINST
ESTATE.—An administrator who is personally liable as surety
on notes of deceased is entitled to pay off such notes and present
his authenticated claim therefor against the estate.

Appeal from Lawrence Circuit Court, Eastern District; *Dene H. Coleman*, Judge; affirmed.

*E. H. Tharp*, for appellant.

*Smith & Blackford*, for appellee.

WOOD, J. The appellee, John Mullen, as administrator of the estate of F. M. Smith, deceased, presented an account in favor of himself individually against the estate of Smith in the sum of $2,206.28. The account was duly verified, and was by Mullen allowed as administrator and classed as a fourth class claim. The claim was presented to the probate court by the appellee, Mullen, for allowance, and was contested by the widow and heirs of Smith. The probate court allowed the claim in the sum of $898.02, and rejected the claim for the balance. Mullen appealed to the circuit court.

The cause was submitted to a jury in the circuit court, and at the conclusion of the testimony the court directed the jury to return the following verdict: "We, the jury, find that the interest of John Mullen in the policy of insurance introduced is the face of the policy." The verdict was returned as directed, and the court thereupon entered a judgment in favor of Mullen in the sum of $2,000 and such accumulations as amounted on the policy. From that judgment is this appeal.

Mullen testified that he insured F. M. Smith's life in the sum of $2,000, on which he kept the premiums paid until the death of Smith. He identified his account filed for allowance by the probate court and testified that he had made a mistake as to the interest, but that with that exception the items were correct; that he had furnished the articles shown by the itemized account. Smith had a policy in some company in which his widow was the

beneficiary, and on that policy Mullen paid the premium for Smith for two years. Smith was a tenant on Mullen's place for three years. The first year Smith made arrangements with Jones & Green to furnish him, and Mullen signed Smith's note as security for the amount. Mullen did not know exactly what the amount was for the year 1920.

The effect of Mullen's testimony, without setting the same out in detail, was that the items of his account were correct, except as to the interest. He testified that he and Smith were to divide the proceeds of the crop half and half. Mullen was asked why there were no credits of any cotton raised and grown by Smith during the years he was a tenant on witness' place, and witness replied that he was not buying cotton. He stated that when Smith went to the store to pay his account he arranged the same with the merchants, and for whatever balance Smith would make a note he (Mullen) signed the same as security for Smith. The only credit Smith got on his account during those years was for some hay witness got from him. Mullen testified that the note for $900, executed to Jones & Green and signed by the witness, was for supplies furnished Smith. This note was paid by witness on the date on which same is marked paid. Witness testified also that he furnished Smith the items of the supplies set out in his account. The policy of life insurance for $2,000 on the life of Smith in favor of Mullen as the creditor of Smith was identified and introduced in evidence.

The testimony on behalf of the appellee by three witnesses was to the effect that Smith told them that he had insured his life for the benefit of Mullen, and two of these witnesses testified that Smith stated that he owed Mullen enough to cover the amount of the policy, or more, for supplies furnished him for which Mullen had paid.

Mrs. Smith testified in her own behalf in substance that her husband owed Mullen at the time of his death $104.03, and that he owed Jones & Green $100 and a

little over. She stated that Jones came to their house while her husband was sick, and he signed a blank note, but they did not settle that night. She knew that her husband did not owe Jones & Green $900. Her husband made a note to Jones & Green the last year. She identified the signature of her husband on three notes, but did not think he signed the $900 note. The signature on that note did not look like her husband's. She was asked: "Will you say that you didn't testify and admit in the probate court that it was his signature," and she replied, "That question was not asked me." She stated that she didn't remember that her attorney made such admission before the probate court.

Witness John Green testified for the appellant that he was a member of the firm of Jones & Green during the years that Smith traded with his firm. He identified notes that had been executed to his firm by Smith, including all the notes referred to in the testimony of appellee, and among them the note for $900.

In rebuttal W. P. Smith, attorney for appellee, testified that on the trial of appellee's claim before the probate court Mrs. Smith and her attorney both admitted that all the signatures on the notes were signed by F. M. Smith.

1. There is nothing in the testimony of the appellant or of her witness Green which tends to contradict the testimony of the witnesses for the appellee. This testimony for appellee shows conclusively that Smith had his life insured in favor of the appellee in the sum of $2,000. He stated that he owed appellee that amount or more and insured his life to protect the appellee against the loss of this indebtedness.

The appellant contends that the notes of F. M. Smith to the firm of Jones & Green for $900 and $132.67 should not have been paid by the appellee without due authentication. But these notes were the notes also of the appellee, and the appellee was bound to pay the same, and had the right to pay the same without the necessity of a pre-

sentation to him as the administrator of the estate of Smith. After paying the same, the appellee as the holder of the notes and owner thereof, had the right to present his claim including these notes to the probate court for allowance against the estate of Smith. The appellee's claim against the estate of Smith was duly authenticated.

2. The appellant next contends that the court erred in directing the jury to return a verdict finding that the interest of appellee in the policy of insurance introduced is the face value of the policy. The evidence is set forth, and it speaks for itself. We are convinced that the undisputed evidence shows that the estate of Smith at the time of his death was indebted to the appellee in a sum greater than the value of the policy on Smith's life. This policy was issued naming the appellee as the beneficiary for the purpose of protecting him as the creditor of Smith for the amount of Smith's indebtedness to the appellee. The testimony of Mrs. Smith was of a negative character, and did not tend to contradict the testimony on behalf of the appellee. The testimony on behalf of the appellee positively identified the notes as the notes of Smith, and established the correctness of his account, and also established the fact that Smith, during his life, admitted that he owed appellee more than the face value of the policy, and had obtained insurance on his life to protect the appellee.

The judgment is in all things correct, and it is therefore affirmed.